---

(Cuyahoga County Common Pleas, 1901.)
T. W. KEEFE v. THE CLEVELAND CITY RAILROAD COMPANY.

---

(1.) An electric street railway company, in the construction and operation of its road in a municipal highway, under grant of right from the municipality, is not liable to a lotowner for injury to his trees standing in front of his lot, but within the lines of the street, if the injury results only from such interference with the trees as is reasonably necessary in the proper construction and operation of its railway.

(2.) Where land is conveyed by deed absolute on its face, an express trust may be shown by evidence *aliende;* but the evidence must be clear and conclusive, showing such agreement concurrently with the conveyance, and its terms and conditions.

---

PHILLIPS, J

This motion to direct a verdict is based, in argument, upon three grounds:

(1.) The first one I shall speak of is, that a *cestui que trust* can not maintain such action—that he has not such interest in, or title to, the property as gives him a right of action for the kind of injury complained of here. This question has heretofore been decided, I understand, upon demurrer to the petition, and has been decided against the defendant. For that reason I will not further consider this ground, but will follow the decision of this court, by another member of it, already made in this case.

(2.) The second ground urged is, that a lot-owner within the city, who has planted shade or ornamental trees on the street, between the curb and the sidewalk, has no such property right in the trees as will authorize him to maintain this kind of action.

This presents a question somewhat novel to me, although I have had a good deal to do in the course of years with the rights of property owners in streets, and the right of control of streets by municipalities. As I understand the well-settled law, it is, that within municipalities (unless there be occasional exceptions, where a country road has by annexation become a street of the city), the lot-owner does not have the fee in any part of the street, but the fee is vested in the municipality, in trust, for the use intended by the dedication. We have a statute that makes this the effect of an allotment and dedication of streets, etc., within a municipality, Revised Statutes, 2601. As I understand it, the lot-owner has, by reason of his ownership of a lot bounded by the street, a right to the use of the street in connection with his lot as a means of ingress and egress to and from

his lot. This is a property right that the lot-owner has in the street, recognized as a property right in him incident to his ownership of the lot. This property right can not be interfered with, without compensation. The street may be used for any and all purposes of dedication; and it has been held, over and over again, that the construction and maintenance of a street railway in a street, whatever the motive power, does not impose an additional burden, and is a use consistent with the purposes of the dedication, and results in no injury of any property right of a lot-owner whose lot is bounded by the street. Now, the lot-owner not having any title to any part of the street, his having no property right in the street except the one I have referred to, as a means of access to his lot, what is the status of the lot-owner with reference to trees which he plants, raises and cares for in the sidewalk of the street, or between the sidewalk and the curb? Certainly no one could wilfully destroy the tree without liability,—I mean without civil liability; yet I do not think that the property owner has the right to plant the tree or has a right to maintain it, if it interferes with the proper and authorized uses of the street for any purpose that falls within the purposes of the dedication. The whole street, from lot line to lot line, constitutes the public highway; and the fee in it, ordinarily, (and it is so in this case) is vested in the municipality, in trust, to hold and to exercise control over it for the public uses that fall within the purposes of the dedication. This is the doctrine well sustained by the authorities. I have no doubt the municipality might remove a tree that has been planted as these trees seem to have been planted, located as they are located; I have no doubt the municipality might remove them, might destroy them, when reasonably necessary in order to adapt the street to the present needs of the public, in the legitimate uses of the street. That must be so. So that the interest of the lot-owner who plants the trees and cares for it, must be an interest that is *sub modo*, and not absolute. He does not own the ground; as a lot-owner he has no interest in any part of the street adjacent to his lot, except for access to his lot. And yet, it must be the law that a lot-owner has, as against a mere obtruder, as against all strangers, a right of action for damages for the needless destruction of the tree. It must be his tree, subject to removal or destruction by the public for the purposes that I have stated. He plants and maintains the tree by mere sufferance. Now, in this case, the right was granted to the defendant, the street railway company, by the municipality, to construct

and operate a street railroad within this street, and to operate it by electricity. In the operation and construction of such road it became necessary, as we all know, to have wires carrying the electric current,—they are ordinarily strung upon poles—and a feed wire strung at one side of the street. What right does that give to the company to interfere with the property that the plaintiff here had in these trees? Now, that use of the street being a proper use of it, the municipality having the authority to confer upon the company the priviledge of building and operating its road with this equipment, what right, if any, was transferred by that means to the company with reference to these trees? The building of a street railway in a street of a municipality is simply one means of improving the highway. That is why it is authorized; that is why it can be authorized; and that being a legitimate mode of improving the street, equipping it for more rapid transit, it must be that any interference with this class of property that is reasonably necessary and proper in the construction and operation of that kind of improvement of the highway must be submitted to by the owner, because this class of property—the interest of lot-owners in the trees in front of their lots—must be subject to such interference as the reasonable necessities of the public in the proper uses of the highway demand; but that is the limit, that is the extent to which the railway company could be authorized to interfere with this class of property under a grant of the right to build and operate its road. I suppose that in the exercise of such right, a tree might be destroyed; it might be removed, part of it might be cut away, if necessary and proper in the construction or operation of the road. And when the company has had this right transferred to it from the city, as an incident to the right to build and operate a road, it seems to me that when the question arises as to whether there is actionable wrong in its interference with the trees on the sidewalk, that the burden is upon the party complaining to show, not only the injury, but to show that it was needless, that it was not necessary, that a reasonable construction and operation of the road and its appliances did not require such interference with the trees. It takes that to constitute a right of action in respect to the property. This class of property being subject to such interference, when the lot-owner claims that the interference has been wrongful, it seems to me the burden is upon him, as a part of his case, to show that the interference he complains of was not reasonably necessary and proper.

Now, it is claimed here that the evidence tends to show unnecessary and unreasonable interference with these trees. The evidence does tend to show that this line was made fast to some parts of these trees. It does not appear, however, that the attachment of the line to the tree was injurious to it; it was the contact of the line with the tree that caused the injury. Now, whether that could have been avoided ,whether these lines could have been erected elsewhere in the vicinity of the trees without going through them, without attaching the line to the tree, whether they could have been so constructed as not to come in contact with the tree, are questions on which, I think, there is no evidence. We have no evidence that shows how these lines might have been constructed otherwise than as they were constructed. The evidence does tend to show that the construction that was used injured these trees, destroyed some of them. But whether that could have been avoided in the reasonable construction and operation of these appliances, I think does not appear. It seems to me it is incumbent upon the plaintiff to show, to introduce evidence tending to show, that in the exercise of this right that was granted to the company they had needlessly interfered with the trees. It must be so when we start out with the proposition that interference is authorized if it be necessary or reasonably proper. It must appear by some evidence in support of the complaint that it was unnecessary and not reasonably proper. The following are some of the authorities sustaining the foregoing statement of the law:

In *Vanderhurst* v. *Tholcke*, 113 Cal., 147, it is held that the municipality, in the exercise of its control of the municipal highways, has power to cause the removal of shade trees growing in the sidewalks. The public are entitled to the free and unobstructed use of the entire street and sidewalk; and the degree of obstruction requiring removal of trees within the lines of the street is a question for the municipality to determine, in the absence of an abuse of discretion. See, also, 74 Ga., 164; 142 Mass., 495.

In *Simmons* v. *Toledo*, 8 C. C., Rep., 535, it is held that the grant by the municipality of the right to construct and operate an electric street railway carries with it the right to erect and maintain within the street the necessary poles for the support of the requisite wire, and such use of the street is not an additional burden that will entitle the a 'joining lot-owner to relief. See, also, 48 Ohio St., 390; 23 Pa., Co. Ct., Rep., 81.

In *Telephone Co.* v. *Francis*, 109 Ala., 224, the court held, that "an abutting proprietor's ownership of the trees in a city street, whether they were planted by him or acquired by devolution of title to the adjacent property, is a qualified and limited ownership, subordinate to the public right to safe and convenient passage, and to rights, powers and duties of the governing municipal body, in the protection, promotion and establishing of every public use in and upon the streets in a city."

In this case, the telephone company placed its poles in the sidewalk, near the curbing, and to make way for its wires it cut and removed parts of the abutting lot-owner's trees standing in the sidewalk. It was held that such interference with the trees, being reasonably necessary, did not invade the property-right of the lot-owner. In the course of the opinion, the court says: "In respect of all such matters, the private right of the owner of the abutting property to maintain the trees must yield to the paramount public right whenever the necessity may arise, although, until such necessity does arise, the owner is clearly entitled to the enjoyment of all benefits which may result to his property from such trees, and to protection from their destruction or mutilation by others. For instance, if the roots of the trees should cause irregularities or breaks in the pavement upon the sidewalk or street, or if the shade or moisture from the trees should rot or injure a wooden pavement, or if the trees otherwise interfered with vehicles or foot passengers, it would, in our opinion, be clearly within the power and duty of the city to remove such trees, and without liability to the owner. In principle, we can perceive no substantial difference between the exercise of that right by the city, and where the removal of the trees may become necessary in locating upon a street a public work authorized by law to be placed upon the street."

In *Dodd* v. *Traction Co.*, 57 N. J. L., 482, the lot-owner complained of the cutting of the branches of trees standing, not within the lines of the street, but upon his lot. The entire opinion of the court is as follows: "The boughs of the trees that were trimmed overhung the street, and were subject to removal by the municipal authorities whenever the public exigency or convenience required it. The city had conferred on the defendant the right to extend its wires, in the usual mode, along the streets; and such authority involved, by implication, the competency to do whatever was reasonably necessary to effect the end in view. Whatever the city could have done, to carry into effect the project in question, the defendant could do."

(3.) As to the third ground of the motion, the claim is, that there is no evidence here tend-

ing to show title to this lot in the plaintiff. The title alleged is an equitable title. It is alleged in the petition that the wife of this plaintiff holds the legal title, but holds it in trust for the plaintiff, and that he is the beneficial and equitable owner of the property. The deeds that have been put in evidence show the legal title in the plaintiff's wife, by a deed that makes no reference to any trust, and it is sought here to show a trust outside of the conveyance. That may, of course, be done, but when it is attempted, it must be done by evidence that shows clearly, and leaves no reasonable ground to doubt, that the conveyance was made in trust, that that was the purpose of it; and the evidence, in order to establish such trust, must show that the trust was created at the time the estate was created in the trustee. The arrangement, agreement of understanding as to the trust must be concurrent with the conveyance of the title to the trustee. An absolute conveyance could not afterward be turned into a trust by expess agreement, much less could it be turned into a trust by circumstances.

The supreme court has said:

"To establish an express trust, in the case of a conveyance by deed absolute on its face, it is requisite that the evidence should be *clear, certain* and *conclusive,* in proof not only of the existence of the trust, and that, too, at the time of the conveyance, but also as to its *terms* and *conditions.*

"It is not sufficient that circumstances should be in proof calculated to excite a suspicion, or even a probability in the minds of some persons, that might have been a trust; but the proof must show the existence of the trust *affirmatively,* and so *conclusively* as to remove all reasonable and well-founded doubt." 5 Ohio St., 195.

This is simply the application of the general principle that obtains in the administration of the law, that when you come to modify something that is in writing, to modify and engraft something upon it, or to reform it, the evidence in support of the asserted right must be *clear* and *convincing;* as the supreme court says in these cases, "so conclusively as to remove all reasonable and well-founded doubt."

After reciting the evidence upon this point, the court said:

These are the only matters in the testimony tending to sustain, or that it is claimed here tend to sustain, the title of this plaintiff. By the record he has no title. I think it is clear to a demonstration that none of these matters tend in any way to show the creation of a trust. These matters of evidence fall very far short of the requirement of the

law in regard to the creation of a trust outside of an absolute deed. It is requisite that the evidence should be *clear, certain* and *conclusive* in proof not only of the existence of the trust, and that at the time of the conveyance, but also as to its terms and conditions. So, it seems to me, there is an entire absence of any evidence here tending to show an equitable and beneficial interest in this plaintiff. For these reasons this motion must be sustained, and the jury directed to return a verdict for the defendant.

*Foran, McTighe & Baker, J. B. Dawley,* for Plaintiffs.

*Squires, Sanders & Dempsey, W. C. Boyle,* for Defendant.

NOTE.—The doctrine of the foregoing decision was recently applied to shade trees standing in a rural highway, where the landowner owned the fee to the middle of the highway, by the circuit court of Summit county, in the case of *Keck* v. *The A. B. & C. Railroad Company.*